Case 2:22-cv-00140 Document 16 Filed on 07/21/22 in TXSD Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
July 21, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARCUS BELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:22-CV-00140 |
| | § | |
| HINOJOSA, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CASE

Plaintiff Marcus Bell, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

For purposes of screening, the undersigned respectfully recommends that Plaintiff's case be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). The undersigned further respectfully recommends that the dismissal of this case counts as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

---

[1] Plaintiff is **WARNED** that if he accumulates three strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury. *See* 28 U.S.C. § 1915(g).

## I. JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II. PROCEDURAL BACKGROUND

Plaintiff is a Texas inmate currently assigned to Texas Department of Criminal Justice Joe Ney State Jail facility in Hondo, Texas. However, the facts of this case arise during his assignment at the McConnell Unit in Beeville, Texas. Plaintiff filed this inmate civil rights action on June 23, 2022. He named six McConnell Unit correctional officers and officials as defendants: (1) Sgt. Hinojosa; (2) Captain Tanner; (3) Major Puente; (4) Warden Sanchez; (5) Isaac Kwarteng; and (6) Captain Garza. (D.E. 1). The undersigned granted Plaintiff's application to proceed *in forma pauperis* on June 28, 2022. (D.E. 7). On June 29, 2022, the Court received Plaintiff's Motion to Enter Evidence (D.E. 10) which the undersigned will consider as part of Plaintiff's pleadings. Plaintiff appeared telephonically for a *Spears*[2] hearing on July 19, 2022, at which he was given an opportunity to further explain his claims.

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

### III.     PLAINTIFF'S ALLEGATIONS[3]

Plaintiff was assigned to the McConnell Unit from approximately July 2021 to May 2022.  Prior to arriving at the McConnell Unit, Plaintiff was involved in a physical altercation with other inmates at the TDCJ Willacy Unit in Raymondville, Texas.  Plaintiff testified that as a result of the assault he has suffered continuing health problems including head, back, and neck pain, speech problems, and occasional loss of balance.  These health problems have made it difficult for Plaintiff to perform his required work assignments as an inmate.

When Plaintiff first arrived at the McConnell Unit, he was assigned to work in the garment factory.  Plaintiff complained to officials of being unable to work due to his chronic pain and other conditions.  He was seen by unit medical personal and prescribed medications for pain, but he was not excused from working.

In October or November 2021, Plaintiff was reassigned from the garment factory to a work assignment involving general labor which he characterized as picking up bags of slop.  Due to his medical condition, Plaintiff objected to the new work assignment in early November 2021.  He was initially written up for refusing to work, but no official disciplinary action was taken at that time while Plaintiff attempted to obtain a medical pass which would have excused him from working.  However, unit medical personal refused to write him a pass that would excuse him from his work assignment.  During this time period, Plaintiff was seen numerous times by Dr. Isaac Kwarteng, the Unit Medical Director.

---

[3] The factual summary is taken from Plaintiff's Complaint, Plaintiff's Motion to Enter Evidence and his testimony at the *Spears* hearing.

On November 29, 2021, Plaintiff was served a major disciplinary case for not attending work. Plaintiff protested to the prison official who served him with action that he was being harassed. Sgt. Hinojosa, who was working in the area, left his post and approached Plaintiff without wearing a COVID mask. Plaintiff alleges Sgt. Hinojosa lost his temper and yelled at Plaintiff in an angry manner and sprayed him with spittle as he was shouting from a distance of two feet. Plaintiff put his hands up, backed away and yelled for help. Plaintiff testified Sgt. Hinojosa did not punch, kick or otherwise lay his hands on Plaintiff in an assaulting manner. Other officers responded to the incident and handcuffed Plaintiff. One of the officers, Captain Garza, wiped Plaintiff's face with a cloth. Plaintiff was taken to the medical department where he asked to be tested for infections that may have been caused by his interaction with Sgt. Hinojosa. His requests for testing were denied. Plaintiff does not know if he was infected with any disease, but he did not complain of having any symptoms of COVID or other infections. Plaintiff was later taken to the psychiatric ward where he claims to have received no additional treatment.

In addition to receiving the disciplinary case for refusing to work, Plaintiff also received a disciplinary case for creating a disturbance based on his interaction with Sgt. Hinojosa. While awaiting disposition of his disciplinary cases, Plaintiff was placed in segregation for approximately two weeks. Plaintiff complains the conditions of confinement in segregation were unpleasant because he did not have a blanket or a mattress. These conditions exacerbated his chronic pain condition. Captain Tanner served

as the hearing officer for the disciplinary cases. Plaintiff alleges he did not receive fair disciplinary hearings and that Captain Tanner did not consider Plaintiff's evidence or questions Plaintiff had for witnesses. Both disciplinary cases were substantiated resulting in Plaintiff losing commissary, telephone and other privileges and a modification of his inmate classification.

Plaintiff alleges Major Puente and Warden Sanchez were aware of the conditions of confinement in the segregation unit and they did nothing to alleviate the conditions. Plaintiff also alleges he was kept in segregation longer than necessary. He believes correctional officers purposefully delayed processing paperwork that would have resulted in him being released from segregation earlier.

### IV.   DISCUSSION AND ANALYSIS

#### A.   Legal Standard

When a prisoner seeks to proceed *in forma pauperis*, the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional

facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id*.

Plaintiff's allegations arise under 42 U.S.C. § 1983. This section provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S.

42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

### B. Eleventh Amendment Immunity and Official Capacity

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent Plaintiff sues any of the Defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment. Thus, it is respectfully recommended that Plaintiff's claims for money damages against Defendants in their official capacities be dismissed with prejudice.

### C. Excessive Force – Sgt Hinojosa and CPT Garza

Plaintiff claims Sgt. Hinojosa committed excessive force by spitting in his face.

Inmates have a constitutional right to be free from the use of excessive force. *See Anthony v. Martinez,* 185 F. App'x 360, 363 (5th Cir. 2006). To state an excessive force claim, a plaintiff must show the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to cause harm, and the injury he suffered was more than *de minimis* but not necessarily significant. *See Hudson v. McMillian*, 503 U.S. 1, 6-7, 10 (1992). As set forth by the Supreme Court in *Hudson*, the five factors to be considered are: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. *Gomez v. Chandler*, 163 F.3d 921, 923-24 (5th Cir. 1999) (citing *Hudson*, 962 F.3d at 523).

A prison official's "excessive physical force against a prisoner may constitute cruel and unusual punishment when the inmate does not suffer serious injury." *Hudson*, 503 U.S. at 4. In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court ruled that a district court "erred in dismissing Wilkins' excessive force complaint based on the supposedly *de minimis* nature of his injuries." *Id.* at 40. The Supreme Court explained "the core judicial inquiry [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 37 (citations omitted).

"[A]lthough a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is 'directly related to the amount of force that is

8 / 19

constitutionally permissible under the circumstances.'" *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013) (quoting *Ikerd v. Blair*, 101 F.3d 430, 434-35 (5th Cir. 1996)); *See also Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004)) (noting the minimum qualifying injury "changes with the facts of each case"); *Williams v. Bramer,* 180 F.3d 699, 704 (5th Cir. 1999) ("What constitutes an injury in an excessive force claim is ... subjective -- it is defined entirely by the context in which the injury arises."). Courts, therefore, may look to the seriousness of the injury to determine "whether the use of force could plausibly have been thought necessary, or instead evinced such a wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Following the Supreme Court's decision in *Wilkins*, two district courts within the Fifth Circuit have held that an official's action in spitting in an inmate's face did not amount to excessive force or other constitutional violation. *See Jelks v. Cain*, No. 14-0521, 2015 WL 5608245, at *5 (M.D. La. Aug. 18, 2015) (on summary judgment); *McBride v. Ausbie*, No. 3:14-CV-317, 2014 WL 5032720, at *3 (N.D. Oct. 8, 2014) (summarily dismissed under 28 U.S.C. § 1915(e)(2)).

In the instant case, Plaintiff was given an opportunity to explain the spitting incident in detail. The undersigned recognizes spitting can be an assault and in some circumstances in the inmate excessive force context, should result in finding that the inmate has stated a claim. However, the instant case does not involve a correctional officer gathering mucus or saliva in his mouth and spitting on an inmate in a sadistic or assaultive manner. Taken

in the light most favorable to Plaintiff, his case involves a correctional officer losing his temper and shouting at Plaintiff from a distance of two feet resulting in the officer's spittle landing on Plaintiff. The undersigned finds this unfortunate interaction does not amount to excessive force or any other constitutional violation.

Plaintiff further alleges Captain Garza is complicit in the unlawful use of force because she wiped his face with a cloth after the incident. Plaintiff characterizes this action as purposefully destroying evidence. As stated above, the undersigned recommends there was no excessive force, and thus no excessive force to cover up. Further, Captain Garza's action of providing assistance to Plaintiff after an altercation resulting in his being distressed about possible infection does not amount to a violation of his rights.

### D. Deliberate Indifference (Medical Needs) -- **Dr. Kwarteng**

An Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege prison officials acted with deliberate indifference to serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 105 (1976); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

The test for deliberate indifference has both an objective and subjective prong. Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir.

2006)). To prove the subjective prong of the deliberate indifference test, the inmate "must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to the [inmate's] health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed." *Trevino*, 2017 WL 1013089, at *3 (citing *Farmer*, 511 U.S. at 397 and *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999)).

In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm.*" *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (emphasis in original).

Plaintiff complains Dr. Kwarteng did not refer him to a specialist for treatment related to his neck and back pain. Construing his pleadings liberally, he also may be alleging Dr. Kwarteng acted with deliberate indifference to his serious medical needs by denying him a medical swab after the spitting incident. Plaintiff testified he was seen by Dr. Kwarteng numerous times and Dr. Kwarteng prescribed Plaintiff medications. Plaintiff's allegations are based on his disagreement with the care he received. Plaintiff's complaint against Dr. Kwarteng is rooted in Plaintiff's disagreement with Dr. Kwarteng

11 / 19

declining to provide Plaintiff a medical waiver which would have excused him from working. With regard to Plaintiff not being tested for infection after the altercation with Sgt. Hinojosa, Plaintiff does not provide any allegations indicating he became sick following the incident or that medical officials were aware of any health risk to Plaintiff requiring testing. Plaintiff testified at the *Spears* hearing that he did not become sick.

Plaintiff has not alleged a claim of deliberate indifference against Dr. Kwarteng. Plaintiff has not alleged any facts that he has been exposed to a serious risk of harm. Further, Plaintiff's testimony establishes that Dr. Kwarteng and the medical department saw Plaintiff and provided Plaintiff with medical treatment. Plaintiff disagrees with Dr. Kwarteng's diagnosis and course of treatment, however, that disagreement fails to state a viable claim of deliberate indifference.

### E. Disciplinary Hearing -- CPT Tanner

Construing Plaintiff's claims liberally, he complains about the fairness of the procedures in connection with his disciplinary cases. Plaintiff believes the alleged violations for not reporting to work and to creating a disturbance should not have been substantiated. He also complains that the hearings were not fair because he was not allowed to fully cross examine witnesses or present his case. Additionally, he alleges the disciplinary hearings were unnecessarily delayed resulting in Plaintiff remaining in administrative segregation longer than necessary.

Plaintiff's claims are construed as challenging the constitutionality of his disciplinary case. Such claims, however, are barred by the doctrine enunciated by the

Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994). The *Heck* Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Heck*, 512 U.S. at 486-87.

The Fifth Circuit has explained that "[i]t is well-settled under *Heck* that a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that 'violation arose from the same facts attendant to the charge for which he was convicted . . . .'" *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008) (quoting *Heck*, 512 U.S. at 486-87). The *Heck* doctrine also operates to bar prisoners from seeking injunctive relief or otherwise challenging the punishment imposed by a disciplinary proceeding through a § 1983 action. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) ("[Plaintiff's] claim for declaratory relief and money damages, based on allegations ... that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983"); *Clarke v. Stalder*, 154 F.3d 186, 189-91 (5th Cir. 1998) (en banc) (applying *Heck* to bar plaintiff's constitutional claims for injunctive relief that were fundamentally intertwined with his request for restoration of good-time credits).

Plaintiff's disciplinary case was neither overturned by direct appeal nor set aside in the federal habeas corpus case filed in this Court. Because Plaintiff has not successfully had the disciplinary decision set aside, he cannot seek relief against CPT Tanner. Thus, it is respectfully recommended that Plaintiff's claims against CPT Tanner be dismissed.

### F. Supervisory Officials – Major Puente and Warden Sanchez

Plaintiff attempts to raise claims against Major Puente and Warden Sanchez. His claims against these defendants arise out of their positions as supervisors and allegedly being aware of the facts giving rise to his claims and failing to take corrective action.

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (The acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

"Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677).

Plaintiff alleges no specific facts to indicate that Major Puente or Warden Sanchez had any personal involvement in connection with Plaintiff's complaints. Construed in the light most favorable to Plaintiff, Plaintiff alleges these defendants were aware of the facts giving rise to Plaintiff's claims. However, there is no sufficient allegation that these defendants personally participated in any of these matters. Additionally, to the extent

Plaintiff is complaining about the grievance procedures, those claims are not actionable conduct under § 1983. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (Holding that, because inmates have no constitutionally protected liberty interest in having grievances resolved to their satisfaction, there is no due process violation when prison officials fail to do so); *Bonneville v. Basse*, No. 2:12-CV-0200, 2012 WL 4854721, at *3 (N.D. Tex. Sep. 21, 2012) (Concluding that a prison official's denial of prisoner's Step 1 grievances fails to state a due process claim because there is no "federally-protected right to have his grievances investigated and resolved").

Further, Plaintiff's claims could also be construed as complaining about the conditions of confinement while he was in administrative segregation. Plaintiff alleges that for a period of approximately two weeks he was housed in a cell with no mattress, pillow or blanket. He further alleges those conditions made the pain in his neck and back worse.

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. Prison officials must provide humane conditions of confinement; ensure that inmates receive adequate food, clothing, shelter, and medical care; and take reasonable measures to guarantee the safety of the inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Hudson,*, 503 U.S. at 8-10.; *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

The Supreme Court has developed a two-part analysis to govern Eighth Amendment challenges to conditions of confinement. First, under the "objective component," a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment. *Hudson*, 503 U.S. at 8. The challenged condition must be "extreme." *Id.* at 9. While an inmate "need not await a tragic event" before seeking relief, *Helling v. McKinney*, 509 U.S. 25, 33 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety. *Id.* at 35.

Second, the prisoner must show the defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the condition at issue. *Hudson*, 503 U.S. at 8. The proper standard is that of deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). Negligence does not suffice to satisfy this standard, *id.* at 305, but a prisoner need not show the prison official acted with "the very purpose of causing harm or with knowledge that harm would result." *Farmer*, 511 U.S. at 835

Plaintiff was housed in administrative segregation for approximately two weeks while he awaited the resolution of his disciplinary cases. He was deprived of a mattress and a blanket. Plaintiff alleges these conditions aggravated the pain to his back and neck. The undersigned recommends the limited duration of these prison conditions do not rise to the level of an Eighth Amendment violation. Plaintiff has not alleged the conditions caused any additional serious injury. The Court does not take lightly Plaintiff's complaints of pain. However, in this case, Plaintiff's allegations make clear Plaintiff was being treated

by institution medical personnel for his complaints of pain.  While he may disagree with the treatment, Plaintiff was not being neglected.  Further, to the extent Plaintiff is seeking injunctive relief based on the conditions of confinement, those claims are moot because Plaintiff has been transferred to a different facility. *Smith v. City of Tupelo, Mississippi*, 281 F. App'x 279, 282 (5th Cir. 2008) (citing *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001)).

Accordingly, it is respectfully recommended that Plaintiff's claims against Defendants Puente and Sanchez be dismissed with prejudice

## V.     CONCLUSION

For the reasons stated above and for purposes of §§ 1915A and 1915(e)(2), the undersigned recommends: (1) Plaintiff's claims for money damages against Defendants in their official capacity be **DISMISSED with prejudice** as barred by the Eleventh Amendment; (2) Plaintiff's claims for injunctive relief against Defendants in their official capacities be **DISMISSED with prejudice** as rendered moot; and (3) Plaintiff's claims against Defendants in their individual capacities be **DISMISSED with prejudice** for failure to state a claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). The undersigned respectfully recommends further that this dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g), and that the Clerk of Court be **INSTRUCTED** to send notice of this dismissal to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.

Respectfully submitted on July 21, 2022.

                                                                                     Jason B. Libby
                                                                                United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).